UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

ARCHIE BURNETT,

     Plaintiff,

v.                                        Case No.  2:09-CV-743-FtM-DNF

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____/

## OPINION AND ORDER[1]

Plaintiff filed an application for  a period of disability and disability insurance benefits on November 27, 2007, and Supplemental Security Income (SSI) on February 4, 2008, alleging disability as of July 1, 2007 [Tr. 22].  The claims were denied initially on April 29, 2008, and upon reconsideration on August 18, 2008  [Tr. 12].   On January 20, 2009,  a hearing was held before Administrative Law Judge Irwin Bernstein [Tr. 19].

On May 19, 2009, the Administrative Law Judge  issued his decision denying Plaintiff's applications. [Tr. 12-19]  The Appeals Council denied the Plaintiff's Request for Review on August 16, 2009 [Tr. 2-5], making the ALJ's decision the final decision of the Commissioner.   For the reasons set out herein, the decision of the Commissioner is **reversed and benefits are awarded.**

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

---

[1]   Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated January 28, 2010.  (Doc.# 14).

I.      SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ
        DECISION AND STANDARD OF REVIEW.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On November 27, 2007 and February 4, 2008, respectively, Plaintiff filed his applications for Disability  Insurance Benefits and "SSI" alleging  disability beginning July 1, 2007.   The Decision of  ALJ Irwin Bernstein, dated May 19, 2009, denied Plaintiff's claim for benefits [Tr. 12-19].  At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 1, 2007, (the alleged onset date) and that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2010. [Tr. 12].  At Step 2,  the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus (DM),  hepatitis C, diabetic neuropathy of the feet and hypertension [Tr. 14). At Step 3, the ALJ found that during the period in question, Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described  in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525,

404. 1526, 416.925 and 416.926)   At Step 4, the ALJ determined Plaintiff had the residual

functional capacity ("RFC") to perform sedentary work as follows: (1) lift or carry up to 10

pounds occasionally or frequently; (2) stand or walk up to 2 hours, sit  for up to 6 hours, in

an 8-hour workday; (3) occasional postural activities; and (4)  avoid concentrated exposure

to pulmonary irritants, hazardous machinery, and unprotected heights [Tr. 14-15].

     Based on this "RFC" and without the testimony of a vocational expert ("VE"), the

ALJ found Plaintiff was unable to perform his past relevant work as a cook (Tr. 17).

Plaintiff's "RFC" and vocational profile coincided with the Medical-Vocational Guidelines

(Grids) Rule 201.28, which directs a finding of not disabled, thus the ALJ found Plaintiff

was not disabled under the "Act" because he could perform other unskilled, sedentary jobs

that exist in significant numbers in the national economy [Tr. 18]. Accordingly, the ALJ

found the Plaintiff not disabled at step five of the sequential evaluation.

     The scope of this Court's review is limited to determining whether the ALJ applied

the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and

whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S.

389, 390 (1971).  The Commissioner's findings of  fact are conclusive if supported by

substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla; i.e.,

the evidence must do more than merely create a suspicion of the existence of a fact, and must

include such relevant evidence as a reasonable person would accept as adequate to support

the conclusion.  *Walden v. Schweiker*, 672 F.2d 835, 838-9 (11th Cir. 1982).

     Where the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the reviewer would have reached a contrary result as finder of fact,

and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.     REVIEW OF FACTS

The Plaintiff was born on August 1, 1965, and was forty-four (44) years old at the time of the Administrative Hearing. [Tr. 434]. Plaintiff testified that he was a high school graduate and worked as an assistant chef for 23 years. [Tr. 25, 89-90, 96-97]. Plaintiff testified he stopped working because his blood pressure and diabetes would not allow him to continue working. Plaintiff's neuropathy was painful and he could not walk as long as he wanted to because of his feet swelling. Plaintiff's blood pressure was not under control and he was on insulin shots twice a day. Plaintiff advised he could walk about a half a block, stand about 20 minutes, bend but could not kneel, sit only about 30 minutes and pick up only about 10 pounds. Plaintiff advised he did not smoke but drank about two beers a week; did not socialize and did not do housework (Tr. 24-25).

In February of 2007, Plaintiff was seen at Hendry ("Hendry") Medical Family Center with a diagnosis of diabetes mellitus, hypertension, asthma, and liver problems. (Tr. 208-209). In June, the doctors at "Hendry" noted Plaintiff's diabetes was poorly controlled. (Tr. 211). In July 2007, Plaintiff was not feeling well and was sent to the hospital. His diabetes was again uncontrolled. "[D]iagnosis: history of alcoholism, rule out alcoholic syndrome;

rule out pancreatitis vs alcoholic hepatitis (Tr. 212, 214)". Plaintiff underwent an ultrasound

of the abdomen on July 6, 2007, which revealed gallstones, right renal cyst and fatty liver

infiltration (Tr. 229). In August 2007, physicians at "Hendry" noted Plaintiff had been

admitted to the hospital with severe hyperlipidemia, uncontrolled hypertension and nephritic

syndrome. Alcoholism was listed in the assessment at that admission  (Tr. 215-218).

Plaintiff was admitted on September 4, 2007, to "Hendry" with acute bronchitis, as

well as diabetes mellitus type 2, alcohol abuse, hepatitis C and essential hypertension.

Plaintiff underwent nebulizer treatment. His blood sugar level on admission was 216. After

treatment with Solu-Medrol for acute respiratory symptoms, his blood sugars went from 200

to 433 and Plaintiff was found to be in acute renal failure. Plaintiff was on IV steroids during

admission causing his blood sugars to increase to 700.  Plaintiff was given complete medical

coverage during this time.  Plaintiff was released on September 7, 2007, and advised to

follow-up with his primary care physician within one week.  (Tr. 139-140).

On November 6, 2007, Plaintiff complained to his doctors at "Hendry" of fatigue and

Plaintiff was sent to the hospital for admission. Plaintiff's diabetes was uncontrolled, he had

GI bleeding, hypertension, hepatitis C, nephritic syndrome.  Plaintiff's condition was listed as

guarded and he was prescribed bed rest. At this admission, alcoholism or alcohol use was

not included in the diagnoses (Tr. 217-219). There was no further information provided in the

medical notes regarding further treatment or release.

On February 24, 2008, Plaintiff was seen at "Hendry" for  hypertensive urgency,

hyperglycemia, bronchial asthma, insulin-dependent diabetes mellitus, hyperlipidemia and

essential hypertension. Plaintiff was started on an insulin drip and his blood sugars were

monitored. When Plaintiff arrived at the emergency room, he had complaints of severe

headaches, photophobia and general weakness. Blood pressure was 182/108; blood sugar was

639. No alcohol abuse or alcoholism was listed in the Assessment (Tr. 289-290). Again, there

was no further information provided in the medical notes regarding further treatment or

release.

On March 31, 2008, Claimant was seen at "Hendry" for follow up for his diabetes.

The report notes "He stopped drinking alcohol 1 month ago." (Tr. 281).  On April 9, 2008,

Plaintiff returned to  "Hendry".  Plaintiff's blood was tested and he was advised to return

home.  When the results of his blood work were in, Plaintiff was called at home to come in

for hospitalization. He complained of generalized weakness and polyuria. Blood pressure was

found to be 216/115. The report notes negative for alcohol abuse. Assessment was:[s]evere

hypokalemia, hyperglycemia, diabetic nephropathy, hematuria, hypo-magnesemia, hypo-

albuminimia, and hypertensive urgency." No alcohol use or alcoholism is listed in the

Assessment/Diagnoses (Tr. 253-254).

On April 11, 2008, Plaintiff's diagnoses were poorly controlled hypertension,

hypolipidemia and diabetes mellitus. Alcohol or alcohol abuse was not listed on the report

(Tr. 255). By April 12, 2008, physicians noted that Plaintiff's blood pressure was better

controlled but still high. (Tr. 256). On April 14, 2008, the treating physicians stated

Plaintiff's blood sugar was under control but blood pressure was still elevated. Plaintiff was

discharged and was advised to follow-up with the nephrologist (Tr. 257).

On April 18, 2008, Plaintiff was seen Dr. S. V. Nagarithinam for a consultative

examination at the request of Social Security Administration.  Plaintiff advised he had been

hospitalized every month for six months due to diabetes and kidney failure. Plaintiff advised

he had been a diabetic for the past 18 years, and had been diagnosed with involvement of the

kidney about 7 months earlier when he started to develop swelling in his legs. Plaintiff has

neuropathy involving both feet. Plaintiff has hypertension, hepatitis C in 1999, and asthma

and was prescribed Advair and Combivent Inhalers.  Upon exam, Dr. Nagarithinam noted: 1+

edema of both legs, and sensation of touch and pain over both feet. Diagnoses were:  (1)

diabetes mellitus with neuropathy and nephropathy, (2) hepatitis C, (3) essential hyper-

tension, and (4) bronchial asthma. (Tr. 233-235).

On April 26, 2008, Dr. Debra Troiano, a file-reviewing physician, completed a

Residual Functional Capacity Assessment ("RFCA") at the request of "SSA".  Dr. Troiano

wrote Plaintiff had a primary diagnosis of COPD and secondary diagnoses of hypertension

/Hepatitis C. Other impairments were diabetes mellitus with neuropathy/nephropathy. Dr.

Troiano noted Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds; could

stand and/or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday.  Dr.

Troiano noted liver function tests showed elevations in ALT/AST and alkaline phosphates;

and extremities showed 1+ edema below the knees. Dr. Troiano found Plaintiff had postural

limitations of only occasionally climbing ramp/stairs and never climbing ladder/ropes or

scaffolds. Dr. Troiano noted scaffolds should be avoided and climbing stairs should be

limited to 1/3 of the work day. Further, Plaintiff should avoid even moderate exposure to

extreme cold or humidity, also fumes, odors, dusts, gases, poor ventilation, etc. and should

avoid even moderate exposure to hazards such as machinery or heights.  Plaintiff's primary

diagnosis was COPD with secondary diagnoses of hypertension/Hepatitis C. Other alleged

impairments were diabetes mellitus with neuropathy/nephropathy. This physician checked that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds; could stand and/or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; and that Plaintiff's liver function tests showed elevations in ALT/AST and alkaline phosphates; and extremities showed 1+ edema below the knees. Dr. Troiano checked that Plaintiff had postural limit- ations to only occasionally climbing ramp/stairs and never climbing ladder/ropes/ scaffolds. Further, Plaintiff should avoid even moderate exposure to extreme cold or humidity, also fumes, odors, dusts, gases, poor ventilation, etc. and should avoid even moderate exposure to hazards (machinery, heights, etc.) (Tr. 245-252).

On May 14, 2008, Plaintiff was seen at "Hendry" for headaches – his hypertension was uncontrolled and there was poor compliance with medications. Plaintiff was diagnosed with nephritic syndrome, diabetes mellitus, dyslipidemia, history of Hepatitis C, and asthma. No alcohol abuse or alcoholism is listed in this report.

On May 21, 2008, Plaintiff had an eye examination at the Family Eye Care reporting problems with his vision being blurry all the time. On examination the left eye showed mild edema and the retina showed scattered dot/blot hemorrhages. This defect is consistent with background diabetic retinopathy and was Plaintiff's diagnosis. Plaintiff was to return for special testing and given a booklet on diabetic retinopathy.  (Tr. 316-317).

On June 22, 2008, Plaintiff returned to "Hendry" the doctors noted his renal function had improved but his blood sugars remained elevated – it was recorded at 307. No alcohol abuse or alcoholism was listed in the report (Tr. 295). On June 30, 2008, Plaintiff returned to his physicians at "Hendry" complaining of tingling sensation in both legs, numbness and pain

in both feet; and again was diagnosed with diabetes mellitus uncontrolled (poor compliance); nephritis syndrome, dyslipidemia, hepatitis C and phlebitis and asthma.  Plaintiff advised that he felt tired and sad due to his illness. No alcoholism or alcohol abuse is listed in the report (Tr. 275-278).

On August 14, 2008, Dr. L. A. Woodard, a file-reviewing physician, completed a Residual Functional Capacity ("RFC") Assessment Form at the request of "SSA". Dr. Woodward wrote Plaintiff's primary diagnosis was: diabetes mellitus/alcoholism – poor control with secondary diagnoses of diabetic nephropathy, high blood pressure – poor control; other alleged impairments were diabetic neuropathy. Dr."Woodward noted Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, could stand about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday; was limited to only occasionally climbing, balancing, stooping, kneeling, crouching, or crawling (less than 1/3 of the time). Dr. Woodward checked that Plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards (machinery, heights, etc.). (Tr. 308-315).

On August 28, 2008, Plaintiff returned to "Hendry" to refill medications and complained of left leg shaking and weakness. He had sharp pain in both feet. Blood pressure was 140/80 (Tr. 383).  On October 2, 2008, Plaintiff was admitted to Hendry Regional Medical Center and discharged the next day. Diagnoses were non-ketotic hypersomular state, history of insulin dependent diabetes mellitus with hemoglobin A1c greater than 10%; hypertensive urgency, history of diabetic neuropathy, hypokalemia, diabetic retinopathy, history of bronchial asthma, acute renal failure and chronic insufficiency, and hyperlipidemia. No alcohol abuse or alcohol use was noted on the report. Dr. Louis-Charles noted the

Plaintiff does not have money for medication. Consequently, Plaintiff does not take his medication due to lack of funds (Tr. 346-350).

On October 28, 2008, Plaintiff returned to "Hendry" and was diagnosed with "diabetes mellitus uncontrolled – he was non-compliant but could not afford his medications. His hypertension was uncontrolled; he had $CRF_2$ and nephritic syndrome, hypolipidemia, dyslipidemia, DPN, and asthma". (Tr. 394).

On November 24, 2008, he returned to his doctors at "Hendry" and complained of swelling on the right toe  (Tr. 373). In November 2008, he was seen at the Hendry Emergency Department for left toe swelling and foot throbbing. No alcohol abuse or alcoholism was noted in the report (Tr. 333). Again, on December 1, 2008, he complained of right toe swelling with pain and redness. The physician noted "[P]laintiff is unable to afford his medications and is applying for disability." (Tr. 276). Bilateral arterial Doppler ultrasound was performed but was unremarkable (Tr. 373-374). No assessment of alcohol abuse or alcoholism is included in any of these reports (Tr. 276, 333, 373-374).

On December 23, 2008, Dr. Walter Mitta completed a "Medical Statement Regarding Diabetes for Social Security Disability Claim." Dr. Mitta is a treating physician at Hendry Family Care.   Dr. Mitta checked that Plaintiff had "[T]ype II diabetes; neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station; retinitis proliferans; and nephropathy".  Dr. Mitta found Plaintiff could work <u>no</u> hours per day; could stand for 15 minutes at a time and sit for 30 minutes at one time.  Dr. Mitta found Plaintiff to have multiple medical problems:  diabetes mellitus uncontrolled,

nephritic syndrome, chronic renal failure, severe HTN, Hepatitis C, and a blister on his left foot. (Tr. 384).

### A.   SPECIFIC ISSUES

#### I.   THE ALJ GAVE LITTLE WEIGHT TO THE OPINION OF THE TREATING PHYSICIAN

Dr. Mitta, one of Plaintiff's treating physician at "Hendry", completed a Medical Statement stating:"[P]laintiff has Type II diabetes with neuropathy which is demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station; retinitis proliferans; and nephropathy". Dr. Mitta advised Plaintiff can  work "no" hours per day; could stand only 15 minutes at a time, sit only 30 minutes at a time; could lift 10 pounds occasionally, 5 pounds frequently; could only occasionally balance. Also, Dr. Mitta's form indicates that in his opinion Plaintiff meets Listing 9.08A Diabetes mellitus "with neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station."  (Tr. 385).

The ALJ discounted this opinion "as to the statement by Dr. Mitta that Plaintiff was unable to work any hours out of an 8 hour day" and gave it little weight (Tr. 17). However, this particular statement by the ALJ suggests that the ALJ does not discount the remainder of Dr. Mitta's statement that Plaintiff has diabetes mellitus with neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station; thus meeting the requirements of Listing 9.08A.

As to Dr. Mitta's statement that Plaintiff is unable to work any hours out of the day, the ALJ discounted that and stated (1) that Dr. Mitta's treatment notes as well as the objective medical evidence did not substantiate such limiting severity; he stated (2) that Dr. Mitta did not take into consideration Plaintiff's continued non-compliance with his medication; and he stated (3) that Dr. Mitta did not take into consideration the Plaintiff's "continued alcohol abuse which is evident throughout the doctor's treatment notes."

The ALJ has not provided good cause for giving little weight to Dr. Mitta's opinion: A review of the evidence of record shows that alcohol or history of alcoholism is listed in the treatment notes of record in July 2007, in August 2007, (Tr. 212-218); history of alcoholism was listed in January 2008 (Tr. 221-223, 284, 286); in March 2008 his treating physicians stated "He stopped drinking alcohol 1 month ago" (Tr. 281). After that date there is no evidence of alcohol abuse or use whatsoever in the treatment notes. Substantial evidence does not support this basis that the ALJ gives for discounting and giving little weight to Dr. Mitta's opinion.

The ALJ also gives little weight to Dr. Mitta's opinion because Dr. Mitta did not take into consideration Plaintiff's continued non-compliance with his medication. However, as the Eleventh Circuit has stated, "[W]hile a remediable or controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, [s]he is excused from non-compliance. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). The burden of proving unjustified non-compliance is on the Commissioner.  In *Belle v. Barnhart*, the Eleventh Circuit stated that if ones disability could be cured by certain treatment, yet treatment is not financially available, then a

condition which is disabling in fact continues to be disabling in law. *Belle v. Barnhart*, 129 Fed. Appx. 558 (11th Cir. 2005).

In this case, the Plaintiff's treating physicians noted Plaintiff was unable to afford his medications (DM poor controlled) (Tr. 209); in June 2008 Plaintiff went to "Hendry" because he had run out of his medications the day before and he needed refills (Tr. 277); in October 2008 he told his treating doctor that he could not afford to buy his medications due to severe economic deficiency. The doctor said Plaintiff had been denied Medicare and had been denied disability – he strongly suspected that one day the patient might not get to the hospital on time due to cardiac arrest secondary to hypokalemia (Tr. 346); the treating physician wrote "The patient does not have money for medication. Subsequently does not take his medication due to affordability." (Tr. 348). Again his doctor wrote "Pt is with poor compliance he is unable to afford medication." (Tr. 384). The evidence of record supports the fact that this Plaintiff cannot afford his medications. The ALJ did not appropriately address this factor in his Decision.

For this reason, the ALJ has failed to provide good cause for rejecting Dr. Mitta's opinion based on his finding that Plaintiff was non-compliant with his medications and his findings that Dr. Mitta did not consider that fact. Further, the ALJ has not provided a sufficient basis on which to base a finding that treatment compliance would have restored Plaintiff's ability to work.[2]

---

[2] An ALJ is not permitted to make medical findings or indulge in unfounded hunches about a claimant's medical condition or prospect for improvement. He is not free to base his decision on unstated reasons or hunches. *Haag v. Barnhart*, 333 F. Supp.2d 1210 (N.D. Ala. 2004), 1219. In order to deny benefits on the grounds that Plaintiff failed to follow a prescribed treatment, the ALJ must find that if Plaintiff followed the prescribed treatment, Plaintiff would be able to return to work. *Stewart v. Astrue*, 551 F. Supp. 2d 1308 (N.D. Fla. 2008), *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Dr. Mitta wrote that this Plaintiff has multiple medical problems – diabetes mellitus uncontrolled, nephritic syndrome, chronic renal failure, severe HTN, Hepatitis C and blisters on his left foot. (Tr. 385). Dr. Mitta never states that if Plaintiff were compliant with his medications, his condition would improve to the point that he could work full-time on a sustained basis.

The evidence of record supports Dr. Mitta's statements. Dr. Mitta is a physician with Hendry Family Care Center ("HFCC"). That facility has diagnosed poorly controlled diabetes mellitus in addition to hypertension and asthma since at least February 2007. By January 2008, the physicians at "HFCC" added nephritic syndrome to the list of diagnoses (Tr. 223). By March 2008, they listed nephritic syndrome with CRF, in addition to Plaintiff's other medical conditions, and referred Plaintiff for nephritic consultation (Tr. 282). By April 2008, they noted severe hypoalemia, hyperglycemia, diabetic nephropathy, microscopic hematuria, hypomagnesemia, hypoalbuminia, and hypertensive urgency (Tr. 254). By May 2008, Plaintiff was also diagnosed with diabetic retinopathy (Tr. 317). In August, the physicians at HFCC again listed diabetes mellitus, nephritic syndrome, CRF, hypertension uncontrolled, DPN, blisters on the left toes, hepatitis C, asthma, and other medical conditions (Tr. 373). Again, in December 2008, his physicians noted the "blisters on the left toes, nephritic syndrome, diabetes mellitus uncontrolled, CRF, DPN, PUQ, HTN uncontrolled (Tr. 377)". It was at this time, in December 2008, that Dr. Mitta wrote his opinion and stated that Plaintiff has multiple medical problems, listed the multiple medical problems, and stated Plaintiff could work no hours per day. This was his medical opinion.

The ALJ discounted that opinion and has not established good cause for doing so. The physicians at "HFCC", including Dr. Mitta, are Plaintiff's main treating sources. Plaintiff was examined by a physician at the request of Social Security in April 2008. Even that physician noted Plaintiff's diabetes mellitus with neuropathy and nephropathy, hepatitis C, hypertension, and asthma. After that exam, in May 2008, Plaintiff was also diagnosed with diabetic retinopathy and began developing the problem with blisters on his toes. Dr. Mitta had access to all of the medical evidence, including the later diagnosed blisters on the toes (which Dr. Mitta noted in his medical notes from August to December 2008) and the retinopathy which and not been diagnosed prior to the consultative examination and the date the "RFC" was completed by Dr. Troiano on April 26, 2008.

Lastly, another physical "RFC" was completed by a Dr. Woodard on August 14, 2008. However, Dr. Woodard erroneously reports that "[A] review of med. (sic) Records on file indicate clmt w/continued alcoholism and therefore, poor control of DM, incl. nephropathy, electrolyte imbalance/poor glucose control" (Apr 2008) (Tr. 310). As previously noted, the record is devoid of reference to "continued alcoholism" since April 2008. In fact, on April 9, 2008, his treating physicians at Hendry Regional Medical Center indicated negative alcohol abuse. Further, this physician based his "RFC" opinion on only some of the diagnoses-related impairments (Tr. 308). He did not consider the additional diagnoses of diabetic retinopathy and blisters on the left toes – he could not have considered those impairments since evidence of those impairments was not submitted to SSA until October 16, 2008 (Tr. 316) and February 26, 2009 (Tr. 324), after the "RFC" was written. It appears Plaintiff has been denied benefits based on an "RFC" written in August, prior to the

submission of all of the medical evidence of record in this case, and based on an "RFC" that

states the Plaintiff continued to abuse alcohol when in fact there is no evidence to support

such a statement. For these reasons, Plaintiff contends that the ALJ has not provided good

cause to discount the opinion of Dr. Mitta, the treating physician.

**2.      THE ALJ FAILED TO PROVIDE AN ADEQUATE
ANALYSIS AT STEP 3 OF THE SEQUENTIAL
EVALUATION (whether claimant's impairment or
combination of impairments meets or equals the criteria of
an impairment listed in 20 CFR Part 404, Subpart P,
Appendix 1).**

The Social Security Administration has established a five-step sequential evaluation

process for determining whether an individual is disabled (20 CFR 404.1520(a)). At step

three of the process, the ALJ must determine whether the claimant's impairment or

combination of impairments meets or medically equals the criteria of an impairment listed in

20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

The ALJ is required to discuss whether a claimant's impairments meet a particular

listing. *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007).  In this case at step three, the ALJ

summarily concluded that "[t]he claimant does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1." The ALJ did not identify the listed impairment for which

Plaintiff's symptoms fail to qualify, nor did he provide any explanation as to how he reached

the conclusion that Plaintiff's symptoms are insufficiently severe to meet any listed

impairment.

Listing 9.08 Diabetes mellitus requires to meet the Listing, that a claimant have (A)

neuropathy demonstrated by significant and persistent disorganization of motor function in

two extremities resulting in sustained disturbance of gross and dexterous movements, or

gait and station (see 11.00C); OR (B) acidosis occurring at least on the average of once

every 2 months documented by appropriate blood chemical tests (pH or pC02 or

bicarbonate levels); OR (C) retinitis proliferans; evaluate the visual impairment under the

criteria in 2.02, 2.03, or 2.04.

A review of the record shows that the ALJ has provided no analysis of Dr. Mitta's

opinion and no analysis as to whether Dr. Mitta's statement shows Plaintiff meets or equals

Listing; 9.08 Diabetes mellitus.  However, substantial evidence supports Plaintiff's

contention that he does meet Listing 9:08 Diabetes mellitus.

### 3.       THE ALJ FAILED TO ELICIT THE TESTIMONY OF A VOCATIONAL EXPERT

Once a claimant proves that [s]he can no longer perform his/her past relevant work,

the burden shifts to the Commissioner to show the existence of other jobs in the national

economy which, given the claimant's impairments, the claimant can perform. *Jones v.*

*Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999). When the claimant cannot perform a full

range of work at a given level of exertion or the claimant has non-exertional impairments

that significantly limit basic work skills, exclusive reliance on the grids is inappropriate. In

such cases, the Commissioner's preferred method of demonstrating that the claimant can

perform other jobs is through the testimony of a "VE". *Jones v. Apfel*, 190 F.3d 1224, 1229

(11th Cir. 1999).

In cases where non-exertional impairments exist, the ALJ may use Medical-

Vocational Guidelines as a framework to evaluate vocational factors, but must also

introduce independent evidence, preferably through a vocational expert's testimony, of

existence of jobs in the national economy that the claimant can perform. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996). A Claimant who could not perform work requiring climbing, balancing, working at heights or around dangerous machinery has been found not able to perform the full range of work. *Welch v. Bowen*, 854 F.2d 436, 439 (11th Cir. 1988). Environmental restrictions are non-exertional impairments. *Syrock v. Heckler,* 764 F.2d 834, 837 (11th Cir. 1985).

In this case, Plaintiff submits that the Residual Functional Capacity ("RFC") Assessment determined by the ALJ is based on factual error in that the ALJ states that Plaintiff's alcoholism and alcohol abuse is evident throughout the treatment records. As previously noted Plaintiff stopped drinking alcohol in January 2008 and the medical records support that finding. Therefore, the "RFC"established by the ALJ is not based upon substantial evidence.

Also, the ALJ, in his Decision limited Plaintiff to only occasional postural activities during the workday, and stated Plaintiff must avoid concentrated exposure to pulmonary irritants, hazardous machinery and unprotected heights. (Tr. 14-15). Thus, the ALJ, in finding Plaintiff not disabled, relied strictly upon the Medical-Vocational Guidelines or Rules (hereinafter "Grid Rule") (Tr. 18, referring to 20 CFR Part 404, Subpart P, Appendix 2.)

As SSR 83-10 notes, the "RFC" addressed in a Grid Rule establishes the presence of an occupational base that is limited to and includes a full range (all or substantially all) of the unskilled occupations existing at the exertional level in question. (see Ex. D, SSR-

83-10 at p.3). Therefore, to apply the "RFC" addressed in a Grid Rule, the Plaintiff must be capable of performing all or substantially all of the jobs applicable by that Grid Rule. That is not the case here. The ALJ added additional limitations – the ALJ limited Plaintiff to only occasional postural activities during the workday, and must avoid concentrated exposure to pulmonary irritants, hazardous machinery and unprotected heights

As SSR 83-12 states, "[T]he Medical-Vocational Guidelines which follow Appendix 1 as Appendix 2 contain numbered table rules which direct conclusions of "Disabled" or "Not Disabled" where all of the individual findings coincide with those of a numbered rule. The table rules do not direct such conclusions when an individual's exertional "RFC" does not coincide with the exertional criteria of any one of the external ranges, i.e., sedentary, light, medium, as defined in sections 404.1567 and 416.967 of the regulations." (emphasis added) (See SSR 83-12 attached hereto as Exhibit E).

The ALJ should not have applied the Medical-Vocational Rules and found Plaintiff not disabled, since he found Plaintiff to have limitations not covered under the Rules. The ALJ should have elicited the testimony of a vocational expert at the hearing to determine whether jobs exist in the national economy that Plaintiff can perform with the limitations he imposed.

Remand to the Commissioner for further fact-finding is unnecessary because all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that Plaintiff was disabled. *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).

### III.   Conclusion

This Court finds that the ALJ has failed in his burden to articulate the effect of all of the Plaintiff's combined impairments in determining his disability.  *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).  The ALJ has failed in his burden to provide substantial evidence to this Court that  Plaintiff has the residual functional capacity to perform the exertional and non-exertional requirements of any work which exists in the national economy.  Additionally, the ALJ should have provided the testimony of a vocational expert to verify the existence of jobs in the national economy that the claimant can perform.

Therefore,

(1)     The Office of the Clerk of Court shall enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **reversing** the decision of the Commissioner and **awarding** the Plaintiff benefits.

(2)     The Office of the Clerk of Court is directed to close the file.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this    20th   day of February, 2011.


_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
All Counsel of Record